UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHANNON ALLEN<br>1118 Varney St SE<br>Washington, DC 20032<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY<br>(a/k/a "WMATA")<br>300 7th Street, SW<br>Washington, DC 20024<br><br>Defendant. | Civil Action No. _____ |

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff Shannon Allen, and for her Complaint against Defendant Washington Metropolitan Area Transit Authority (hereinafter, "WMATA"), respectfully states as follows:

**Jurisdiction and Venue**

1. Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in District of Columbia law as D.C. Code Ann. § 9-1107.10.

2. Venue in this Court is proper as both the negligent acts and/or omissions committed by Defendant and Plaintiff's injury occurred in the District of Columbia.

**Parties**

3. Plaintiff Shannon Allen is, and has been, at all relevant times, an adult resident of the District of Columbia.

4. At all times relevant herein, Defendant WMATA was the owner of the Metro subway system being operated by its employees, who were acting within the course and scope of their employment and/or agency with WMATA.

5. Defendant WMATA was created when Congress approved the Washington Metropolitan Area Transit Authority Compact ("WMATA Compact"), D.C. Code §§ 9-1107.01 *et seq.*, which was signed by the District of Columbia, Maryland, and Virginia.

6. By the terms of the WMATA Compact that created it, WMATA is liable for its negligent acts and/or omissions and those of its Directors, officers, employees, and agents committed in the conduct of any proprietary function. D.C. Code § 9-1107.01(80).

7. The Metro Transit Police Department ("MTPD") is an organ of WMATA responsible for enforcing the rules and regulations of the transit zone jurisdictions and WMATA. D.C. Code §§ 9-1107.01(76).

8. The provision of mass transportation is deemed a proprietary function for purposes of the WMATA Compact.

**Facts**

9. On February 15, 2024, Ms. Allen was present at the Eastern Market Metro Station, in Washington, DC, working as a contract security Special Police Officer (SPO) for her employer Allen Universal.

10. On that date, at approximately 1:00 pm, a blue line train had pulled into the station, that had been experiencing difficulty and issues on the way to the station.

11. After it pulled in, Ms. Allen, working as a security SPO, was standing on the station platform. All of a sudden, there was a loud explosion from below the train, and smoke started to fill the station.

12. Ms. Allen immediately went to work, shouting and asking for assistance in getting the doors open so passengers could exit. She remained in the station only as necessary to direct passengers and others to exit the station, telling those who did not witness the explosion that they had to leave the station for their own safety.

13. In the process, and while she exited the underground station, Ms. Allen inhaled noxious gases while attempting to evacuate passengers from the station and manage the emergency after the train explosion which was caused by WMATA's negligence. After Ms. Allen had successfully evacuated those present, she exited the station.

14. By the time Ms. Allen had done her duty and was able to exit the station, her pre-existing asthma was acutely triggered, she felt a burning sensation in her throat, and her inhaler was not providing any relief whatsoever. She was having severe difficulty breathing, and was taken emergently to GW Hospital, where she stayed and was treated for her injuries from the incident.

15. While Ms. Allen had asthma previously, it was exacerbated severely by the incident, and her lung function was severely hampered.

16. DC Police and EMS arrived on the scene and checked Mss. Allen out. After examination and treatment at the scene, she was transported to GW Hospital for further evaluation and treatment of her injuries.

17. After the incident, WMATA and other investigators conducted an investigation and included, in part, that an assembly box on the side of the train, which

was a 7000-series train, had come loose and was rubbing against the third rail. The third rail is the electrified line running along the track, which provides power to Metro trains.

18. When that happened, electricity began to arc from the "third rail shoe assembly," which is the part of the train that connects to that electrified track. That led to the explosions, fire and smoke.

19. As a direct and proximate result of the incident and WMATA's negligence, Ms. Allen suffered severe injuries, and pain and suffering. Ms. Allen, has experienced, and will in the future continue, to experience pain and suffering and other effects from these injuries and this incident.

20. As a direct and proximate result of Defendant's negligence, Ms. Allen has required extensive medical treatment, has incurred substantial medical expenses, and lost wages due to her having to miss work. Ms. Allen may also be required to incur future medical and treatment expenses as the proximate result of the incident.

21. Defendant WMATA was negligent, and said negligence was a proximate cause of the incident, and Ms. Allen's injuries.

22. Defendant WMATA is liable for Ms. Allen's injuries and all injuries and damages she suffered as the result of this incident.

## Count I – Negligence

23. The preceding paragraphs are hereby incorporated by reference as though fully set forth herein.

24. Plaintiffs further allege that at all times relevant herein, WMATA's trains, railroad operations, tunnels, tracks, and adjoining railroad tracks (the "subway property") were owned, controlled, operated, managed, constructed, maintained, repaired, designed, evaluated, built, overseen, patrolled, and supervised by WMATA.

25. Plaintiffs further allege that on the date of the incident, and the period prior thereto, Defendant WMATA was responsible for maintaining and ensuring the safe use and proper condition of the railroad operations and property, including locomotives, trains, tracks, signs, signal, switches, safety devices, communication devices, and other equipment at and along the subway property, and for properly and safely managing, overseeing, and coordinating the travel of railroad trains upon and along said property.

26. Plaintiffs contend that at all times mentioned herein, Defendant WMATA, as a common carrier, owed a duty of reasonable care to its passengers, and/or those in its custody, on its premises, including Ms. Allen.

27. Plaintiffs further allege that Defendant WMATA breached this duty in some or all of the following respects:

   a. By failing to properly inspect and maintain the train, and train components, including but not limited to the assembly box on the side of the train;

   b. By failing to properly inspect and maintain the third rail running through the relevant section of tunnel and the station;

   c. By failing to properly inspect and maintain the ventilation system for the relevant section of the tunnel and the station;

   d. By failing to properly train its agents, servants, and/or employees in the proper activation and use of the ventilation system in the event of a fire or smoke emergency;

   e. By failing to equip its trains, specifically the train involved in this incident, with safety equipment adequate for emergencies of this nature;

  f. By otherwise negligently, carelessly, and wrongfully failing to take reasonable precautions to protect those present on its premises as invitees and/or otherwise in its custody from injury.

28. As a direct and proximate result of Defendant WMATA's negligence, Ms. Allen was in the station after the explosions, and as the station filled with smoke; during this time she fought to assist others at the station and to direct them to safety.

29. As a further direct and proximate result of the Defendant WMATA's negligence, Ms. Allen was forced to endure severe physical pain and suffering after the incident.

30. As a direct and proximate result of the aforesaid negligence, Ms. Allen suffered, and will continue to suffer, severe personal injuries, past/future medical expenses and other expenses for treatment, lost wages, great pain and suffering, and severe mental anguish and emotional distress.

31. All of the foregoing injuries and damages were caused without any negligence on the part of Ms. Allen contributing whatsoever.

32. For all such injuries proximately resulting from Defendants' negligence, Defendant is liable to Ms. Allen for compensatory damages in an amount not less than $500,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendants as follow: (1) compensatory damages in an amount not than $500,000, which amount will be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

## **JURY TRIAL REQUESTED**

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Dated: July 30, 2025                 Respectfully submitted,

**SHANNON ALLEN**

/s/ Stan M. Doerrer
By: Stan M. Doerrer (DC Bar # 502496)
LAW OFFICE OF
STAN M DOERRER PLLC
950 North Washington Street
Alexandria, VA. 22314
stan@doerrerlaw.com
Tel: (703) 348-4646
Fax: (703) 348-0048